J-A26021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.C., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.A.C., A MINOR | : : : : : : : | |
| | : | No. 302 WDA 2019 |

Appeal from the Order Dated February 19, 2019
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0001366-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 26, 2019**

A.A.C. appeals from the dispositional order[1] adjudicating him delinquent after he admitted to committing one count each of causing a catastrophe,[2] risking a catastrophe,[3] criminal mischief,[4] and theft by unlawful taking,[5] two

_____

[1] In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent. ***See Commonwealth v. S.F.***, 912 A.2d 887, 888-89 (Pa. Super. 2006).

[2] 18 Pa.C.S § 3302(a).

[3] 18 Pa.C.S. § 3302(b).

[4] 18 Pa.C.S. § 3304(a)(1).

[5] 18 Pa.C.S. § 3921(a).

counts each of arson[6] and recklessly endangering another person (REAP),[7] and nine each of counts of burglary[8] and criminal trespass.[9]  After careful review, we vacate, reverse and remand.

The events leading to the above adjudications involved A.A.C. and his brother (boys) intentionally breaking into Clearfield County camps at a campground,[10] stealing a golf cart and fuel-burning torches and lighters, attempting to burn the locks off several campers, stealing a hammer and using it to smash locks and door knobs of camps, and setting off fireworks near campers.  N.T. Finding of Fact and Transfer Proceedings, 5/21/15, at 2-3.  The particular incident leading to their arrests involved the boys lighting a firework and lobbing it over a truck parked in the driveway to a camper.  Although the boys claimed they did not think that the firework ever exploded, it did set fire to leaves.  The fire ultimately spread throughout the campgrounds, completely burning down an occupied camper.[11]  *Id.* at 3.  The boys unsuccessfully attempted to hook up a hose to a nearby spigot to extinguish the fire.  *Id.*

---

[6] 18 Pa.C.S. §§ 3301(a)(i), (ii) (arson endangering persons).

[7] 18 Pa.C.S. § 2705.

[8] 18 Pa.C.S. § 3502(a)(2).

[9] 18 Pa.C.S. § 3503(A1)(i).

[10] A.A.C.'s family had been owners of a campsite for five to six years at the time of the instant incident.  N.T. Finding of Fact and Transfer Proceedings, 5/21/15, at 11.

[11] Fortunately, the people occupying the camper were able to escape without injuries.  They, however, lost all the contents of the camper.

On May 19, 2015, a juvenile petition was filed against A.A.C. in Clearfield County for the above-stated crimes; A.A.C. was held in the Clearfield County detention facility until his "Finding of Fact" hearing on May 21, 2015. At the hearing, A.A.C. tendered an admission to 26 counts including arson, causing or risking catastrophe, criminal mischief, burglary, criminal trespass and REAP. At the conclusion of the hearing, the trial judge, Clearfield County President Judge Fredric J. Ammerman, transferred the matter to Allegheny County, where A.C.C. resides, for adjudication and disposition. *See* 42 Pa.C.S. § 6321(c)(1). On July 24, 2015, A.C.C. filed a motion to withdraw his admission in Clearfield County through his attorney, George L. Saba, Esquire, of the Allegheny County Office of the Public Defender. On September 16, 2015, Judge Ammerman issued an order dismissing counsel's motion.

In January 2016, A.A.C. was admitted to a mental health facility, Glade Run, where he successfully completed a treatment program in August 2016. On February 13, 2017, following a hearing, Allegheny County Judge Arnold Klein transferred the matter back to Clearfield County due to A.A.C.'s wish to withdraw his admission in the case. Judge Klein ordered the Clearfield County trial court hold a Pa.R.J.C.P. 409(A)[12] hearing on the matter. On January 26, 2018, Judge Ammerman dismissed Judge Klein's order, concluding that Allegheny County was not the proper venue within which to seek to withdraw

---

[12] *See* Pa.R.J.C.P. 409(A) (once court has ruled on offenses, court conducts hearing to determine if juvenile is in need of treatment, supervision, or rehabilitation).

A.A.C.'s Clearfield County admission.  On October 25, 2018, the Allegheny County trial court held an inter-county adjudication/commitment review hearing, following which it scheduled the adjudicatory hearing for January 2019.

On January 28, 2019, Judge Paul. E. Cozza of the Allegheny County Court of Common Pleas presided over A.C.C.'s adjudicatory hearing, finding A.A.C. delinquent and in "need [of] additional treatment and rehabilitation." N.T. Inter-County Adjudicatory/Commitment Review, 1/28/19, at 6, 15.  The court placed A.A.C. on probation, ordering him to attend the Auberle Tapp-C program[13] and to pay court costs and $6,864 in restitution to his victims.  The court also ordered that A.C.C. "have no verbal or physical, direct, or indirect contact with" the victims of his acts and that he not "be on or in close or adjacent proximity to the [victims'] residence or business property."  No-Contact Order, 1/28/19.    At the dispositional hearing in January 2019, evidence was presented to show that A.A.C. had graduated from McKeesport High School and the Job Corps, was working at a full-time position in security, and had incurred no further delinquent or criminal charges since the instant offenses.

On January 30, 2019, A.A.C. filed a timely post-dispositional motion for reconsideration.  The court held a hearing on the motion and, on February 19,

---

[13] This program is offered to juveniles who have been adjudicated of arson-related crimes.

2019, denied the motion. A.A.C. filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, A.A.C. presents the following issues for our review:

(1)   Whether the juvenile court erred in adjudicating A.[A.]C. delinquent when the Commonwealth failed to demonstrate that A.[A.]C. was in need of treatment, supervision, or rehabilitation.

(2)   Whether the juvenile court erred by preventing A.[A.]C from eliciting testimony regarding the underlying nature of the incident when determining whether A.[A.]C. was in need of treatment, supervision, or rehabilitation.

Appellant's Brief, at 7.

"The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition[.] We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." *In re T.L.B.*, 127 A.3d 813, 817 (Pa. Super. 2015). An adjudication of delinquency requires the juvenile court to find that the juvenile: (1) has committed a delinquent act and (2) is in need of treatment, supervision, or rehabilitation. *Commonwealth v. M.W.*, 39 A.3d 958, 959 (Pa. 2012). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." *Id.* at 966. Finally, it is the Commonwealth's burden to prove beyond a reasonable doubt that the juvenile is in need of treatment, supervision or rehabilitation. *In the Interest of N.C.*, 171 A.3d 275, 283 (Pa. Super. 2017).

In *M.W.*, our Supreme Court noted:

Under the Juvenile Act, 42 Pa.C.S. § 6321(a)(3), a juvenile proceeding may commence when a petition is filed indicating a

- 5 -

J-A26021-19

juvenile has committed delinquent acts. After the filing of a petition, the juvenile court holds an adjudicatory hearing at which evidence on the petition for delinquency is heard. After hearing the evidence on the petition for delinquency, the court shall make and file its findings as to whether the acts ascribed to the child were committed by him. 42 Pa.C.S. § 6341(a). If the court finds that the allegations of delinquency have not been established, it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding. Conversely, if the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent, it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. [42 Pa.C.S.] § 6341(b).

After the juvenile court has entered an adjudication of delinquency on the record, the court must hold a hearing to determine a disposition which is "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare[.]" 42 Pa.C.S.A. § 6352(a).

*Id.* at 960.

Moreover, if the court determines that the juvenile committed the acts alleged in the delinquency petition, "the court must, within 20 days if the child is in detention or within 60 days if the child is not in detention, 'hear evidence as to whether the [juvenile] is in need of treatment, supervision or rehabilitation and [] make and file its findings thereon.'" ***Commonwealth v. M.W.***, 39 A.3d 965 (Pa. 2012), citing 42 Pa.C.S. § 6314(b). "This is a separate and distinct finding from whether the child committed the acts alleged." ***Id.*** Finally, "[i]n the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or

- 6 -

rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered." 42 Pa.C.S. § 6341(b).

Under Pennsylvania Rule of Juvenile Court Procedure 407(A)(1):

(a) [B]efore [a] court can accept an admission [from a juvenile], the court **shall** determine that the admission is knowingly, intelligently, and voluntarily made.

\* \* \*

(c) At [a] hearing, the court **shall** conduct an independent inquiry with the juvenile to determine:

(i) whether the juvenile understands the nature of the allegations to which he or she is admitting and understands what it means to admit;

(ii) whether the juvenile understands that he or she has the right to a hearing before the judge and understands what occurs at a hearing;

(iii) whether the juvenile is aware of the dispositions that could be imposed and the consequences of an adjudication of delinquency that can result from an admission;

(iv) whether the juvenile has any questions about the admission; and

(v) whether there are any other concerns apparent to the court after such inquiry that should be answered.

Pa.R.J.C.P. 407(A)(1)(a), (c)(i-v) (emphases added). A Rule 407 admission colloquy serves to ensure that the juvenile is making his or her admission "knowingly, intelligently, and voluntarily." *See* Pa.R.J.C.P. 407, Comment ("The admission colloquy is similar to a guilty plea colloquy in criminal court; however, the juvenile court judge has special responsibilities under the Juvenile Act in providing a balanced attention to the protection of the community, the imposition of accountability for delinquent acts committed,

and the development of competencies to enable juveniles to become responsible and productive members of the community. ***See*** 42 Pa.C.S. § 6301.").

Here, at the Clearfield County Finding of Fact/Transfer hearing, the judge stated, "[w]e'll go with the finding of fact and the transfer." N.T. Finding of Fact and Transfer Hearing, 5/21/15, at 19. The court heard testimony from A.A.C.'s mother and the victims who occupied the destroyed camper. The court never conducted the requisite Rule 407(A)(1)(c) inquiry with A.A.C. In fact, A.A.C.'s attorney states in his brief, "[u]nfortunately, the transcript of the findings-of-fact/admission hearing reveals that Judge Ammerman *never conducted an independent inquiry with A.[A.]C., in violation of Rule 407(A)(1)(c). In fact, A.[A.]C. never uttered even a single word on the record throughout the hearing.*" Appellant' Brief, at 12-13 n.10 (emphases added). Moreover, there is nothing in the record to indicate that the judge ever reviewed A.A.C.'s written colloquy,[14] which the Comment to Rule 407 indicates "serves as an aid for the court in making its determination that the admission is knowingly, intelligently, and voluntarily made." Pa.R.J.C.P. 407, Comment.

We find these omissions to be reversible error, especially where A.A.C. repeatedly attempted to withdraw his admission and those requests were summarily denied. Because the Clearfield County trial court failed to comply

---

[14] A copy of the form is also not contained in the certified record on appeal.

with the requirements of Rule 407(A)(1)(c), A.A.C.'s admission was not tendered knowingly, intelligently, and voluntarily.[15] Accordingly, we vacate the February 19, 2019, dispositional order, reverse the adjudication of delinquency, and remand the matter to the juvenile court for a new adjudicatory hearing consistent with this memorandum.[16]

Dispositional order vacated. Adjudication of delinquency reversed. Case remanded. Jurisdiction relinquished.[17]

---

[15] To compound the error, the trial judge in Allegheny County found that "because of their admission[s] in Clearfield County, I have no choice but to find them delinquent of all these counts." N.T. Inter-County Adjudicatory/Commitment Review, 1/28/19, at 16.

[16] We also note that there is nothing in the certified record from the finding of fact/transfer hearing to indicate that the juvenile judge complied with 42 Pa.C.S. § 6341 and made and filed his findings "as to whether the acts ascribed to the child were committed by him." 42 Pa.C.S. § 6341(a).

[17] On remand, we remind the court to not only perform a thorough colloquy, but to ensure that the appropriate charges are brought based on the allegations. Instantly, the court found that A.A.C. admitted to committing arson under both 18 Pa.C.S. §§ 3301(a)(1)(i) and (ii). Subsection (a)(1)(ii) requires that the actor commit the act "*with the purpose of destroying or damaging an inhabited building or occupied structure*." 18 Pa.C.S. § 3301(a)(1)(ii) (emphasis added). However, the Clearfield County trial judge stated that "I understand and it certainly appears that . . . the[se juveniles] *didn't intend to burn down the place*," but, rather, it was "just extreme recklessness." N.T. Finding of Fact and Transfer Proceeding, 5/21/15, at 15 (emphasis added). Even if A.C.C. had the intent to cause an explosion by igniting and throwing the firework over the truck, this would fall under subsection (a)(1)(i), not (a)(1)(ii).

Moreover, we note the trial court's statement in its Rule 1925(a) opinion that "*it is standard practice in this court*, as well as most others in Allegheny County Juvenile Division, that a fire-setter's treatment program be included in any disposition." Trial Court Opinion, 4/29/19, at 5 (emphasis added). It is well

J-A26021-19

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/26/2019

_____

established that "the burden remains with the Commonwealth to prove the juvenile is in need of treatment, supervision, or rehabilitation." *See In the Interest of N.C.*, 171 A.3d 275, 281 (Pa. 2017). Here, there is a dearth of evidence proving that A.A.C. needs fire-setting treatment, especially when his arson conviction appears to be infirm, almost three years have elapsed since his admission, and he has voluntarily undergone mental health treatment, successfully completed high school, enrolled in the Job Corps and graduated from that program, and holds a job as a security subcontractor. Moreover, we caution the trial court that it must employ an *individualized* approach when considering whether a specific juvenile needs treatment, supervision, or rehabilitation. Such an approach recognizes that "involvement with the juvenile delinquency system has significant consequences for a juvenile, including the potential loss of liberty." *Id.* at 283.