J-S21016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.F., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 627 EDA 2018 |

Appeal from the Dispositional Order February 5, 2018
In the Court of Common Pleas of Montgomery County Juvenile Division
at No(s):  CP-46-JV-0000017-2018

BEFORE:  STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 26, 2019**

K.F. (Appellant) appeals from the juvenile court's dispositional order entered after the court adjudicated Appellant delinquent of committing three acts of simple assault and one act of harassment.[1]  Upon review, we affirm.

The juvenile court accurately summarized the underlying facts as follows:

> On January 9, 2018, [Appellant] was a student at the East Norriton Middle School.  In the school lunch room that day, three teachers saw [Appellant] join in a fight among several students. Teacher Melinda Kelly saw [Appellant] punch teacher Christine Gaertner in the face with her closed fist.  She saw [Appellant] punch teacher Stacey Schreiber in the shoulder with her closed fist.  She also saw [Appellant] hit another student, A.K., in the face with her closed fist as he tried to help Ms. Gaertner restrain [Appellant].  Ms. Schreiber saw [Appellant] punch Ms. Gaertner in

---

[1] In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent.  **See Commonwealth v. S.F.**, 912 A.2d 887, 888-89 (Pa. Super. 2006).

the jaw with a closed fist and also saw her hit A.K. Ms. Gaertner did not see [Appellant] punch her. Rather, her head "popped back" as she felt a sudden contact with her face, and then she made eye contact with [Appellant], who drew her fist back to prepare to land another punch. As the teachers physically restrained her and tried to calm her with words, [Appellant] persisted, flailing her arms, screaming obscenities at the teachers, and demanding that they let her go, all in a continuous effort to rejoin the fight.

Juvenile Court Opinion, 4/20/18, at 1-2 (citations to notes of testimony from the January 17, 2018 adjudication hearing omitted).

The day of the school incident, the Commonwealth filed a delinquency petition. The Commonwealth alleged that Appellant committed aggravated assault, simple assault, and harassment; the Commonwealth further alleged that Appellant was "in need of treatment, supervision or rehabilitation as defined by the Juvenile Act." Petition Alleging Delinquency, 1/9/18, at 2.

A pre-adjudicatory detention hearing was held on January 10, 2018, after which the court determined that "detention was warranted" and it "was contrary to the welfare of [Appellant] to remain in the home of Mother." Order, 1/10/18, at 1. Appellant was detained at the Montgomery County Youth Center (MCYC). The juvenile court convened an adjudicatory hearing on January 17, 2018, after which it adjudicated Appellant of committing three acts of simple assault and one act of harassment. The juvenile court determined that Appellant was in need of treatment, supervision or rehabilitation, and ordered that Appellant remain at MCYC pending a dispositional hearing. The dispositional hearing was held on February 5, 2018. The juvenile court ordered that Appellant be released from MCYC to the care

- 2 -

of her parent, placed on probation, enroll in the Academy Aftercare program, and complete 40 hours of community service. Dispositional Hearing Order, 2/5/18.

Appellant filed this timely appeal. Both Appellant and the juvenile court have complied with Pennsylvania Rule of Appellate Procedure 1925. Notably, Appellant's 1925(b) concise statement reads:

> 1. The Learned Trial Court erred in adjudicating [Appellant] delinquent without hearing any evidence. As per ***In re N.C.***, mere evidence that a juvenile committed a delinquent act, without more, is not enough to prove that a juvenile is in need of treatment, rehabilitation or supervision. Furthermore, there is no presumption that she is in need of Treatment, Rehabilitation, or Supervision because she was not adjudicated of any felonies, which would give rise to a presumption as per the juvenile act.

Appellant's Concise Statement, 3/14/18.

On appeal, however, Appellant states her issues as follows:

> I. Did the juvenile court err in adjudicating a minor delinquent without a separate hearing on the question of whether the minor was in need of treatment, supervision, or rehabilitation?
>
> II. Did the [juvenile] court err in adjudicating the minor delinquent where there was insufficient evidence to support a conclusion that the minor was in need of treatment, supervision, or rehabilitation?
>
> III. Did the adjudicating court err in relying on "the fact that the school has an IEP" to support a finding that the minor is in need of treatment, supervision, and rehabilitation under the Juvenile Act where such a conclusion inherently discriminates against all students with disabilities by making them disproportionately vulnerable to adjudications of delinquency as a result of exercising their right to free appropriate public education under the IDEA?

- 3 -

Appellant's Brief at viii.

In light of the foregoing, Appellant has failed to preserve her third issue regarding her IEP because she did not raise it in her 1925(b) concise statement. Rule 1925 instructs that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). We recently discussed 1925(b) waiver:

> In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." **Lord**, 719 A.2d at 309; **see also Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775, 780 (2005) (stating any issues not raised in a Rule 1925(b) statement are deemed waived). This Court has held that "[o]ur Supreme Court intended the holding in **Lord** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original) (quoting **Commonwealth v. Schofield**, 585 Pa. 389, 888 A.2d 771, 774 (2005).

**U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Tr. Fund v. Hua**, 193 A.3d 994, 996–97 (Pa. Super. 2018). Given the well-settled law, Appellant's third issue is waived.

Conversely, Appellant's first and second issues – more broadly challenging the juvenile court's adjudication of delinquency and determination that Appellant required treatment, supervision, or rehabilitation – were raised

and preserved in Appellant's 1925(b) concise statement. Because the issues are intertwined, we address them together.

Appellant argues that "the juvenile court did not conduct dispositional hearings in accordance with the Juvenile Act by failing to conduct a hearing on the question of whether [Appellant] needed Treatment, Supervision, or Rehabilitation (TSR)." Appellant's Brief at 7. Appellant claims the court violated 42 Pa.C.S.A. § 6341(b) because it failed to conduct a hearing to determine Appellant's need for TSR, and instead rendered a "superficial and cursory" determination that Appellant was in need of TSR without holding "a separate hearing on the matter." *Id.* at 8. Appellant further argues that "because the juvenile court did not conduct a hearing on [Appellant's] need for TSR, there was insufficient evidence to support the finding on that issue." *Id.* at 14. Appellant contends that the court "may not base its finding on its 'own opinion [and] speculation.'" *Id.* at 17 (citing *In the Interest of N.C.*, 171 A.3d 275 (Pa. Super. 2017)).

At the outset – and for context – we reference the purpose of the Juvenile Act:

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2).

With regard to delinquency, the juvenile court:

- 5 -

> . . . may make any of the . . . orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's **treatment, supervision, rehabilitation** and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community . . .

42 Pa.C.S.A. § 6352(a) (emphasis added).

The Juvenile Act "grants broad discretion to the juvenile court in disposition." *In the Interest of D.S.*, 37 A.3d 1202, 1203 (Pa. Super. 2011) (citations omitted). This Court will not disturb a disposition absent a manifest abuse of discretion. *Id.* An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill-will. *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011) (citations omitted).

Following careful review, we find that in arguing against her adjudication, Appellant has mischaracterized the record and the juvenile court's actions. The Juvenile Act prescribes the procedure for delinquency matters as follows:

> **(b)Finding of delinquency.--**If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. The court shall then proceed immediately or at a postponed hearing, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days

after such finding if the child is not in detention, to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon. . . . In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered.

\*\*\*

**(d) Evidence on issue of disposition.--**
(1)(i) In disposition hearings under subsections (b) and (c) all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition.
(ii) Subparagraph (i) includes any screening and assessment examinations ordered by the court to aid in disposition, even though no statements or admissions made during the course thereof may be admitted into evidence against the child on the issue of whether the child committed a delinquent act.
(2) The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of information given in confidence need not be disclosed.
**(e) Continued hearings.--**On its motion or that of a party the court may continue the hearings under this section for a reasonable period, within the time limitations imposed by this section, to receive reports and other evidence bearing on the disposition or the need for treatment, supervision or rehabilitation. In this event the court shall make an appropriate order for detention of the child or his release from detention subject to supervision of the court during the period of the continuance. In scheduling investigations and hearings the court shall give priority to proceedings in which a child is in detention or has otherwise been removed from his home before an order of disposition has been made.

42 Pa.C.S.A. § 6341.

As detailed above, the procedural posture in this case was consistent with the Juvenile Act, and the juvenile court was not required to conduct a "separate hearing" to determine whether Appellant was in need of TSR.

Furthermore, Appellant's reliance on **In Interest of N.C.**, 171 A.3d 275, 279 (Pa. Super. 2017) is unavailing, where Appellant cites **In Interest of N.C.** to support her argument that her adjudication should be reversed because the record contains "no evidence that could have supported [the] conclusion that [Appellant] was in need of TSR." **See** Appellant's Brief at 8.

While we disagree with Appellant's characterization of the record, we agree with Appellant that much of **In Interest of N.C.** is applicable to her case and find it to be instructive. This Court explained:

> Before entering an adjudication of delinquency, "the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the child is in need of treatment, supervision, or rehabilitation." **Commonwealth v. M.W.**, 614 Pa. 633, 39 A.3d 958, 964 (2012) (emphasis in original). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." **Id.** at 966. **See also In re T.L.B.**, 127 A.3d 813 (Pa. Super. 2015) (holding that the juvenile court did not abuse its discretion in finding the appellee was not in need of treatment, rehabilitation, or supervision when, by the time of the deferred adjudication hearing, appellee completed the sexual offender portion of his psychological treatment ordered as part of his dependency matter and had not acted out in sexualized behavior in more than a year).
>
> The Juvenile Act and Rules of Juvenile Procedure contemplate the following process. Once the juvenile court determines the Commonwealth has proved beyond a reasonable doubt that the child committed the acts alleged, the court must enter that finding on the record. **Id.** at 965 (citing 42 Pa.C.S. § 6341(b)). If the juvenile court makes such a finding, next, either immediately or at a hearing held within 20 days, the court must "**hear evidence**

as to whether the child is in need of treatment, supervision[,] or rehabilitation." *Id.* (emphasis added). "If the court finds that the child is not in need of treatment, supervision[,] or rehabilitation[,] it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered." *Id. See also* Pa.R.J.C.P. 409(1). "If the court determines the juvenile is in need of treatment, supervision, or rehabilitation, the court shall enter an order adjudicating the juvenile delinquent and proceed in determining a proper disposition under Rule 512." Pa.R.J.C.P. 409(2)(a).

*In Interest of N.C.*, 171 A.3d at 280–81 (footnote omitted).

*In Interest of N.C.* is distinguishable from Appellant's case. First, in *In Interest of N.C.*, the juvenile court "impermissibly shifted the burden regarding whether Appellant was in need of treatment, supervision, or rehabilitation to Appellant." *Id.* 286. Second, the juvenile court's findings and conclusions were not supported by the record where "[a] review of the transcript reveal[ed] that the adjudication and disposition hearing consisted primarily of argument by counsel from both sides, and the Commonwealth did not seek to introduce evidence on its own accord." *Id.* at 283-84.

Here, the record reveals that the Commonwealth met its burden of proving that Appellant was delinquent, and specifically that she required TSR. *See* 42 Pa.C.S.A. § 6341(b) (The juvenile court "shall hear evidence . . . as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon.").

Appellant did not present any witnesses or evidence at the adjudication hearing. The Commonwealth presented all five of the witnesses – all

- 9 -

employed at Appellant's school – who testified at the adjudicatory hearing. The witnesses consisted of the teachers, Ms. Gaertner, Ms. Schreiber, and Ms. Kelly; the school principal, Dr. Spink; and East Norriton Police Officer Karl Fischer, who had been "stationed" at the school for nine years.

The record further reveals that after presentation of the witnesses' testimony (and four photograph exhibits), the Commonwealth and juvenile court were cognizant of the Commonwealth's burden of proof. *See* N.T., 1/17/18, at 77 (Commonwealth stating to juvenile court, "And Judge, I would submit that we did prove [delinquency]."); *see id.* at 87, 89 (juvenile court stating "I'm up here thinking the entire time about the Commonwealth's burden . . . and what's proved . . ." and "I do think the Commonwealth has proven its case . . . ).

After determining that Appellant committed harassment and simple assault – but not aggravated assault – the juvenile court determined that Appellant was in need of TSR. *Id.* at 90 (juvenile court expressly stating "I find she's in need of treatment, supervision, rehabilitation, and as such, I adjudicate her delinquent."). Appellant's counsel then responded:

> Your Honor, a misdemeanor does not specifically make a juvenile in need of treatment, rehabilitation or supervision and I think the relevant testimony could be heard in the case that she may very well not be in need of treatment, rehabilitation or supervision. I'd ask you to hold the decision on that off to the next court date. The Commonwealth can present further evidence at that point if they have further evidence to present.

*Id.* at 90-91.

The exchange continued:

[COMMONWEALTH]: Respectfully, Judge, we presented the evidence today and we think we have proven our burden, as we've always been required to do, that [Appellant] is in need of at least supervision at this point. So we're going to ask you [to] adjudicate her delinquent based on your finding of guilt. Although the felony is presumptive of delinquency –

THE COURT: It is.

[COMMONWEALTH]: - this conduct, itself, is also evidence of –

THE COURT: I do think because of the multiple victims involved here, [Defense Counsel], and the escalation and the dangerous behavior by your client, even though notwithstanding this is a misdemeanor case, I've heard more than sufficient evidence to substantiate an adjudication of delinquency.

[DEFENSE COUNSEL]: Your Honor, may we also briefly address the matter of detention?

THE COURT: Yes.

[DEFENSE COUNSEL]: Your Honor, I would ask that you allow [Appellant] to return home to her mother today as she has been at the Youth Center at this point for a week. . . . I think she can be safely supervised in her home . . . There are many supports that could be put in place that could help supervise her . . .

THE COURT: Let me just add with respect to the adjudication of delinquency, which I neglected to say, that I have heard that [Appellant] does get extra support . . . CCT is an added support, therapeutic intervention that can occur in school, out of school, I heard that. So she definitely needs some more treatment. . . . What I'm saying is [Appellant] made a terrifically poor judgment exercise . . . drawing her into a very violent, volatile situation.

So that concerns me, that at the flip of switch suddenly she was drawn in after the police tried to quell the issue . . . clearly it escalated . . . I'm not without concern here.

*Id.* at 91-94.

- 11 -

Specifically addressing TSR, the juvenile court stated:

> I called it the way I saw it on the assault, so [Appellant has] assaults that are going to follow her. But I've got to figure out what drew her to do this. So I'm going to need evals to do that.
>
> You can talk to me about detention today. [Defense Counsel] made some excellent arguments. I'm thinking about everything.

*Id.* at 96.

The court concluded:

> So I can help [Appellant], but right now without evals in my hand to figure out, I'm not comfortable with her going home today. So she's detained here at the Montgomery County Youth Center pending a psychological eval[uation]. She'll come back to me for disposition, which is like sentencing, within 20 days.

*Id.* at 98.

The above comments illustrate that the juvenile court's decision was thoughtful and evidence-based – and not "superficial and cursory" as alleged by Appellant. The court thus issued an adjudicatory hearing order stating that "to aid in disposition, the Juvenile Probation Office is directed to complete the following evaluations and reports on the Juvenile: Psychological." Order, 1/17/18. Upon review, we conclude that the juvenile court did not abuse its discretion. Accordingly, we affirm the adjudication of delinquency, and thus the order of disposition.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/19